UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

AUG – 6 2015

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN )
APPLICATION OF THE UNITED )
STATES OF AMERICA FOR A )
WARRANT TO OBTAIN RECORDS, )
LOCATION INFORMATION, )      No. 4:15 MJ 200 DDN
INCLUDING PRECISION LOCATION )
INFORMATION, CELL SITE )      **FILED UNDER SEAL**
INFORMATION, AND OTHER )
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
(314) 783-1267. )

## AFFIDAVIT

Brandon Burke, being duly sworn, deposes and says that he is a Special Agent with the

Federal Bureau of Investigation (FBI), duly appointed according to law and acting as such.

### Introduction

I am presently employed as a Special Agent ("SA") by the Federal Bureau of Investigation

("FBI"), and have been so employed since December 2007. I am currently assigned to the

DEA/FBI Joint Task Force, which is comprised of DEA and FBI Special Agents and numerous

Task Force Officers from various police departments. My responsibilities with this Task Force

primarily include gang and narcotics investigations. I have received instruction and training on,

and have participated in, investigations involving possession with the intent to distribute and

distribution of controlled substances, and conspiracies associated with the foregoing criminal

offenses which are prohibited by Title 21, United States Code, Sections 841(a)(1) and 846.

Through the course of conducting these investigations, I have been involved in the use of the

following techniques: interviewing confidential human sources; conducting physical surveillance;

conducting undercover drug operations in which drugs are purchased from persons through the use of confidential human sources; consensual and court authorized monitoring and recording of telephonic communications; analyzing telephone pen registers and caller identification system data; analyzing data from mobile telephones; and executing search warrants and arrest warrants.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. Because this affidavit is being offered for the limited purpose of supporting this application, it does not contain every fact known to investigators, but only those facts necessary to support this application.

Upon information and belief, and as explained in greater detail below, the Sprint cellular telephone bearing number **(314) 783-1267** (hereinafter the **"subject telephone"**) has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code, Sections 922(g), 924(c) and 924(j) (hereinafter referred to as "the subject offenses"), by an Anthony JORDAN (hereinafter referred to as "JORDAN"), and others known and unknown.

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agencies to obtain an order, made under Title 18 United States Code § 3122(a)(1), authorizing the installation and use of a pen register and a trap and trace device of the **subject telephone**.

Your affiant further states that there is probable cause to believe that the pen register and trap and trace information associated with the **subject telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

2

### Investigation and Probable Cause

In September 2011, the FBI opened an investigation into the criminal enterprise (CE) operated in part by Anthony JORDAN, aka TT, who supplies various St. Louis street gangs with cocaine and weapons. The investigation into the Anthony JORDAN CE revealed JORDAN is the leader of an organization in St. Louis city responsible for the distribution of cocaine, crack cocaine, and numerous homicides and violent felonies relating to the furtherance of the CE. Investigators have conducted numerous interviews with cooperators and informants that identify JORDAN as a violent offender and drug dealer.

In late 2012, investigators identified the **subject telephone** as used by JORDAN during an open source database check into JORDAN. The database check revealed the **subject telephone** was linked to JORDAN. At this time, an inquiry was conducted with Ameren UE, which revealed JORDAN paid utility service at 4246 Olive, St. Louis, Missouri and 2916 Arkansas, 2nd Floor, St. Louis, Missouri. JORDAN listed the **subject telephone** for both of these addresses.

On January 31, 2013, United States Magistrate Judge Nannette A. Baker, Eastern District of Missouri, authorized a Precision Location Indicator (PLI) for the **subject telephone**. Investigators conducted numerous surveillances of the **subject telephone**, in conjunction with the PLI, which confirmed JORDAN was the user of the **subject telephone**.

On March 5, 2015, a subpoena response from Sprint revealed the **subject telephone** was subscribed to Frederick Haddox, 3535 Arden Avenue, St. Louis, Missouri 63121. According to Sprint records, this account has been in Frederick Haddox's name, with rotating addresses, since October 2002. Investigators believe JORDAN uses Frederick Haddox's name and address to mask his true identity. Investigators know that drug dealers often subscribe alias names to their

3

cell phones to avoid detection from law enforcement. Moreover, investigators had previously obtained a PLI for the **subject telephone**, which through surveillance, revealed JORDAN is the user of the phone.

A toll analysis of the **subject telephone** revealed a consistent call pattern from the most recent period of tolls, January to March 2015, compared to tolls and pen register data of the **subject telephone** since the investigation began in 2011 to 2014. For example, there were 32 contacted numbers according to the tolls on the **subject telephone** for the two months beginning in 2015; eleven of these contacts were in contact with the **subject telephone** in the prior years of the investigation.

In June 2015, a source-of-information (hereinafter referred to as "SOI") provided information into the JORDAN CE. The SOI provided detailed information on numerous homicides conducted by JORDAN and members of JORDAN's CE, which related to the furtherance of the CE. The SOI is presently charged under a one-count federal indictment and is offering assistance in the hopes of obtaining judicial consideration. The SOI's information regarding the JORDAN CE has been corroborated through other sources of information, such as physical surveillance, police reports, and parallel federal investigation. For example, the SOI provided methods JORDAN used to distribute drugs and provide weapons to people near his residence, located on the 4200 block of Sacramento, which was corroborated by a pole camera.

The investigation into JORDAN revealed that he employs numerous telephones to operate his CE in an effort to evade law enforcement. Investigators know from experience working drug trafficking organizations that members of these organizations compartmentalize their criminal activity through the use of telephones.

Investigators believe that the **subject telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code, Sections 922(g), 924(c) and 924(j) (the subject offenses). It is critical that the investigative team be able to locate and monitor the movements of the **subject telephone** thereby assisting in the identification of the co-conspirators and the seizure of narcotics. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

<u>**Investigative Considerations and Techniques**</u>

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.     Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.     Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.   For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.   Wireless providers maintain information, including the

corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

C.      Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.      Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.  A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.   The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.   Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E.      Wireless providers also maintain business records and subscriber information for particular accounts.  This information could include the subscriber's full name and address, the

6

address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F.      Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In addition to records and signaling information from cellular providers, it is also sometimes possible to locate and monitor the movements of a cellular device by directly monitoring signals from the device itself. Such monitoring is accomplished by using a specific form of pen register, which is referred to herein as a cell-site simulator. In particular, a cell-site

7

simulator mimics, to a degree, the activities of a cell tower.  Once the general location of the **subject telephone** is identified (e.g., using cell site location records or E-911/precision location information), a cell-site simulator can be used in the vicinity of the **subject telephone** to detect radio signals that are emitted automatically at the time the **subject telephone** is turned on, and periodically thereafter as long as the phone remains on, regardless of whether a call is being made, to communicate with the cellular infrastructure, including cell towers.  These signals contain identifying numbers for the telephone (*e.g.*, the telephone number and Electronic Serial Number ("ESN") or International Mobile Subscriber Identification ("IMSI") number).  The investigative agency(ies) can use these cell-site simulator techniques to attempt to identify the location from which the **subject telephone** is operating.  The techniques do not intercept any content of communications, but rather search for signals emitted by the **subject telephone**, which are identified through its identifying numbers (which are already known to law enforcement through other means).  The cell site simulator may cause a temporary disruption of services.  Once **subject telephone's** signals are identified (typically, through the use of a cell-site simulator, which can be used only when it is in the general proximity of the **subject telephone**), the strength of the signal emitted by the **subject telephone** can be analyzed to ascertain the general direction and location of the signal, which can assist in identifying the general location from which the **subject telephone** is operating.  After the location is determined, data not associated with the operation is deleted.

In order to locate the **subject telephone** and monitor the movements of the phone, the investigative agency(ies) may need to employ one or more techniques described in this affidavit and in the application of the government.  The investigative agency(ies) may seek a warrant to compel AT&T, any telecommunication service providers reflected in Attachment 1 (herein

8

incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data. The investigative agency(ies) may also install and use its own pen register and trap-and-trace devices, including a cell-site simulator, in an effort to locate and monitor the movements of the **subject telephone**.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies) requests the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

## Conclusion

Based on the above information, there is probable cause to believe that the **subject telephone** is being used to promote and facilitate a conspiracy to distribute narcotics and the requested authorization would provide relevant evidence of the conspiracy.   There is likewise probable cause to conclude that locating and monitoring the movements of the **subject telephone** will lead to the relevant evidence concerning violations of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code, Sections 922(g), 924(c) and 924(j) .

_____ 8/4/2015 _____

DATE

BRANDON BURKE
Special Agent
FBI

Sworn to and subscribed before me this ___6th___ day of August, 2015.

David D. Noce
US Magistrate Judge

10